Sergeant Herbert N. CARRINGTON, Relator,

v.

Alan V. RASH et al., Respondents.

No. A–10104.

Supreme Court of Texas.

April 29, 1964.

Peticolas, Luscombe & Stephens, Wayne Windle, Jr., El Paso, with above firm, for relator.

Tad R. Smith, El Paso, Waggoner Carr, Atty. Gen., Mary Kate Parker Wall, Asst. Atty. Gen., Austin, for respondents.

STEAKLEY, Justice.

■ This proceeding presents for decision the question of whether a nonresident at the time of entering the regular military service of the United States can acquire a voting residence in Texas so long as he is in the military service. We hold that he may not.

Relator, Herbert N. Carrington, is a sergeant in the United States Army. He entered the military service in 1946, at which time he was a resident of Alabama. He has been stationed at White Sands, New Mexico, and has resided in El Paso County, Texas, since February, 1962. He has purchased a home in El Paso, pays taxes in El Paso, registers his automobile in El Paso, and has purchased a poll tax in El Paso. He says that El Paso County is his legal residence, and we assume that such is the case.

Relator desires to vote in the Republican Party Primary Election to be held on May 2, 1964. Respondent, Alan V. Rash, is Chairman of the Republican Party Executive Committee of El Paso County and the Respondent, Margaret Hockenberry is the Presiding Judge of the precinct in which Relator would vote. These Respondents have informed Relator that he will not be permitted to vote because of the opinion of the Attorney General of Texas, dated November 6, 1963, holding that a former non-resident in the position of Relator may not vote in Texas.

Prior to 1954, and for over a hundred and twenty years, the Constitution of Texas disqualified members of the regular military establishments of the United States from voting in this state. This included both native residents and former non-residents. Pursuant to proper legislative action, there was submitted in 1954, and adopted by a vote of the people, an amendment to Suffrage Article VI of the Constitution of Texas, Vernon's Ann.St. As relevant here, this amendment for the first time enfranchised members of the regular military forces of the United States to the following extent:

"Any member of the Armed Forces of the United States or component branches thereof, or in the military services of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces."

■ The self-evident purpose of the amendment to the Constitution was to prevent a person entering military service as a resident citizen of a county in Texas from acquiring a different voting residence in Texas during the period of his military service, and to prevent a person entering military service as a resident citizen of another state from acquiring a voting residence in Texas during the period of military service. Relator argues that the intent of the 1954 amendment was to enfranchise all members of the Armed Forces but to restrict only the voting residence of those individuals entering the military service from Texas to the county of their residence; in other words, says Relator, a former nonresident may choose and change his voting residence in Texas, a privilege denied to original residents of Texas. We do not regard this as a reasonable or plausible construction of the amendment. To so narrowly construe the amendment would be inconsistent with the history of the provisions of the Texas Constitution with respect to the exercise of suffrage by persons in military service. As before mentioned, no member of the regular military establishments could vote in Texas prior to the 1954 amendment, and it is not reasonable to say that the Legislature in submitting the amendment, and the people in their favorable vote thereon, intended to free from all restrictions based on military service those persons who had entered such service as residents of another state, but to restrict those persons entering military service as residents of Texas to the right to vote in the county in which

they resided at such time. Such a construction would, in effect, create a discrimination against residents of the state. Moreover, the very purpose of the disfranchisement of military personnel for so long, and the obvious purpose of restricting the vote of a Texas resident to the county in which he resided at the time he entered the military service, was to prevent a concentration of military voting strength in areas where military bases are located. This basic purpose and policy would be frustrated if individuals in the military service who were former residents of another state could choose and change their voting residence while stationed in Texas.

■ Persons in military service are subject at all times to reassignment, and hence to a change in their actual residence. They are residents in a particular place for a particular period of time under compulsion of military orders; they do not elect to be where they are. Their reasons for being where they are, and their interest in the political life of where they are, cannot be the same as the permanent residents. This is not to say that military personnel are any less citizens; it is to say that military personnel in the nature of their sojourn at a particular place are not, and cannot be, a part of the local community in the same sense as its permanent residents. Denying to such personnel the right of suffrage in the place where they may be stationed—while in no sense denying the exercise of such right in their place of original residence—is not unreasonable and the classification established is nondiscriminatory. The voting restrictions operate alike upon all members of the class. Both the original resident and former nonresident lose the right to vote in Texas upon a change in their legal residence after entering the military service. The nonresident voluntarily gives up his right to vote in his original state of residence by changing his legal residence to Texas. The resident voluntarily gives up his right to vote by changing his legal residence to another county in Texas.

This is not to say that the Texas Constitution purports to, or can, restrict the voting rights of persons in other states. Texas cannot, of course, extraterritorily regulate or limit the voting residence of a person entering the military service as a resident of another state so long as such person remains a citizen of the other state. The Texas Constitution can, however, declare the policy that the enfranchisement of a person in military service shall be limited to the exercise of suffrage in the county in which the person resided at the time of entering the service. The effect on former nonresidents is that they may not acquire a voting residence in Texas; the effect upon original residents is that they may not change their voting residence from one county to another.

This construction does not violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States in its provision that no state shall deny to any person within its jurisdiction the equal protection of the laws. Involved is the question of the reasonableness of the classification; or, to express it otherwise, there is involved the question of whether the 1954 amendment as so construed results in a discrimination which offends the Federal Constitution. The Supreme Court of the United States has long recognized that "the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution. * * * *A State, so far as the Federal Constitution is concerned, might provide by its own constitution and laws that none but native-born citizens should be permitted to vote,* as the Federal Constitution does not confer the right of suffrage upon any one, and the conditions under which that right is to be exercised are matters for the states alone to prescribe, subject to the conditions of the Federal Constitution, already stated * * * *."* (Italics are add-

ed) Pope v. Williams, 193 U.S. 621, 632, 633, 24 S.Ct. 573, 575, 48 L.Ed. 817. The case involved a Maryland statute which provided that a nonresident coming into the state to reside must have filed a declaration of intent so to do a year before he should have the right to be registered as a voter in the state. The statute was unsuccessfully attacked as violating a federal right of the new resident of Maryland.

Later, in 1959, The United States Supreme Court reaffirmed the foregoing principles, saying:

"The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised, * * * absent of course the discrimination which the Constitution condemns. * * * So while the right of suffrage is established and guaranteed by the Constitution * * * it is subject to the imposition of state standards which are not discriminatory and which do not contravene any restriction that Congress acting pursuant to its constitutional powers, has imposed. * * * We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction." Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072.

The Supreme Court in this case sustained a statute of North Carolina which required that prospective voters be able to read and write in the English language any section of the Constitution of the state.

In Gray v. Sanders, 372 U.S. 368, 83 S. Ct. 801, 9 L.Ed.2d 821 [holding that the Georgia county unit system violated the equal protection clause of the Fourteenth Amendment] the Court reaffirmed the principle that "When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instru-

ment for circumventing a federally protected right."

■ We do not believe that a resident of another state upon entering the military service possesses a "federally protected right" to vote in Texas elections while in the military service in whatever county or district in Texas to which he may elect to change his voting residence. The provision of the Texas Constitution under review does not result in the loss of the right of the nonresident to retain his voting privileges under the laws of the state of his residence when he entered the service; its effect is only that a resident of another state entering military service cannot later give up his former residence, and with it the right to vote in such state, and thereupon, while in the military service, acquire a voting residence in Texas.

The petition for writ of mandamus is denied.

CALVERT, C. J., and SMITH, J., dissenting.

SMITH, Justice (dissenting).

This is an original petition for writ of mandamus filed by Relator, Herbert N. Carrington, to compel respondents to determine whether or not Relator is a qualified elector for the purpose of voting in the Republican party primary to be held on May 2, 1964, without taking into consideration the fact that he is a member of the United States Army and entered the military service while residing in Alabama. Respondents in this proceeding are Honorable Waggoner Carr, Attorney General of Texas; Honorable Alan V. Rash, Chairman of the Republican party Executive Committee of El Paso County, Texas, and Honorable Margaret Hockenberry, the "presiding judge" who will conduct the Republican party primary election in Precinct No. 16 of El Paso County, Texas.

Relator is a Sergeant in the United States Army. He entered the service in 1946,

when he was a resident of Jefferson County, Alabama, and has been continuously in the military service since that time. It is undisputed that Relator is at present a resident of El Paso County, Texas, where he and his family have resided since February, 1962. He has designated El Paso, Texas, as his permanent home for all purposes on his military records, has paid ad valorem taxes and will pay such taxes in the future to the City of El Paso and to the County of El Paso, and has shown on his federal income tax return that he resides in El Paso, Texas.

On December 17, 1963, Relator paid the poll tax levied for the year 1963 to the County Tax Collector of El Paso County, Texas. Thereafter, on March 18, 1964, Relator wrote a letter to Respondent Rash, asking whether or not Relator would be allowed to vote in the Republican party primary election to be held on May 2, 1964. Respondent Rash, in his capacity as Chairman of the Republican party Executive Committee of El Paso County, and on behalf of Respondent Hockenberry, as "presiding judge" of Precinct No. 16, answered by letter that:

"Mrs. Margaret Hockenberry and I hereby refuse, and will continue to refuse to recognize Sergeant Carrington as a qualified voter. We have taken this position because he is in the United States Army and he resided outside the State of Texas at the time he entered military service."

In 1954 the following amendment was added to Article VI, Section 2, Constitution of Texas:

"Any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces."

Articles 5.01 and 5.02 of the Texas Election Code, V.A.T.S., restate, in effect, the law as contained in the above amendment.

Prior to Relator's correspondence with the Respondents, Rash and Hockenberry, the Respondent Attorney General, in an opinion, had interpreted the above amendment and its statutory counterparts. In interpreting these provisions, the Attorney General's opinion stated in part:

"* * * It goes without saying that the Texas Constitution cannot regulate voting rights of persons at any place other than within the State of Texas, and can not affect the voting rights of residents of other States while stationed in Texas. This provision relates only to residents of this State; but it does relate both to persons who were residents of Texas before entering service and to persons who became residents of Texas after entering service. If the only place at which a person may vote in this State is the County in which he resided at the time of entering service, and if at that time he did not reside in any County in Texas, it follows that he cannot vote in this State. Accordingly, it was said in an opinion S–148 that no person who entered service as a resident of another State may acquire a voting residence in Texas while he is in service."

Based on this opinion, Respondents Rash and Hockenberry refused to recognize Relator as a qualified voter.

Relator first contends that the Attorney General's interpretation of the above-quoted Constitutional provision is incorrect. It is Relator's position that the provision was not intended to apply to members of the Armed Forces who were *not* residents of the State of Texas at the time they entered the military service, but who are now residents of Texas. Instead, Relator contends that the Constitutional amendment was intended to apply only to servicemen who resided in Texas when they entered the service.

Relator next argues that if the Constitutional amendment in question does apply to persons who resided in Texas and those who resided elsewhere at the time of entering service, then the amendment constitutes an unlawful discrimination *within the class* of military personnel; and, therefore, violates the equal protection clause of Section 1 of the Fourteenth Amendment to the United States Constitution. Relator bases this argument upon the theory that the Constitutional amendment, if applied to all military personnel, discriminates against those servicemen who were *not* residents of Texas at the time of entering the service. To illustrate this alleged discrimination, Relator argues that a serviceman such as himself, who enters the Armed Forces in another state, and thereafter establishes his residence in Texas, is deprived of the right to become a qualified voter in any election so long as he resides in Texas and remains a member of the Armed Forces. This is so because when he acquires a new residence in Texas, he loses his voting privilege at the place where he resided when he entered service, and he cannot meet the residence requirements of Texas. Therefore, he is left without a place to vote. On the other hand, Relator argues that the Constitutional provision in question does not so deprive a serviceman, who was a resident of Texas at the time he entered the Armed Forces, of his right to vote. According to Relator, a serviceman who resides in Harris County, Texas, at the time he enters the Armed Forces, and who thereafter changes his legal residence to El Paso County, Texas, can still remain a qualified voter in Harris County. Thus, Relator concludes the Constitutional provision unlawfully discriminates within the class of military personnel.

Respondents argue that the provision in Article VI, Section 2, of the Texas Constitution was intended to apply to persons who were not residents of Texas at the time of entering service, *and* to persons who were Texas residents. Respondents further contend that this provision does not violate the Fourteenth Amendment of the United States Constitution because *regardless of* where a serviceman resided at the time of entering service, if he changes his legal residence while in service in Texas, he relinquishes his right to vote anywhere.

In my opinion, a determination of this proceeding does not rest upon whether or not the Constitutional provision under attack unlawfully discriminates *within* the class of military personnel, as contended by Relator. Even assuming that it does not, as Respondents so argue, this still does not settle the ultimate constitutional problem as to whether a state may segregate *all* persons in military service as a class, which class is to be treated differently from other persons in regard to the right to vote. In my opinion, such a distinction is arbitrary and unreasonable, thereby violating the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

I fully recognize that the Federal Constitution, or any of its amendments, does not give to a person the privilege to vote in any state. See Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627. It is clear that the privilege to vote in a state is within the jurisdiction of the state itself, "to be exercised as the state may direct * * *." Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). In fact, the Federal Constitution makes voters' qualifications rest on state law even in federal elections. Art. 1, § 2. However, in exercising its broad powers to determine the conditions under which the right of suffrage may be exercised, the state cannot impose standards which the United States Constitution condemns as discriminatory. See Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072.

It is elementary that "class legislation" is invalid where the classification is arbitrary and unreasonable. The classification must rest on real and substantial differences and must reasonably promote some proper object of public welfare or interest. Thus,

without contravening any restriction that Congress has imposed, a state can determine that only those persons who are literate should vote since "[t]he ability to read and write * * * has *some relation* to standards designed to promote intelligent use of the ballot." Lassiter v. Northampton County Bd. of Elections, supra.

In the present case Respondents contend that the purpose of the Constitutional amendment in question is to prevent a concentration of military voting strength in areas where military bases are located because such concentration might lead to complete domination and control of local politics by military men to the prejudice of the civilian citizens of the community. In my opinion this is not a reasonable ground upon which the State can say that there exists a real and substantial difference between servicemen and other citizens, and thereby confer different voting rights on these classes.

With present day mobility and industrialization, large groups, *other than servicemen,* move into the various communities of this state for limited stays, and establish voting residence. One need only look to the large shifts of civilian population to major construction areas as an illustration of this fact.

Wherein lies the reasonable basis for distinguishing between these groups?

In the recent case of Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), our Supreme Court has said:

"* * * there is no indication in the Constitution that homesite or *occupation* affords a permissible basis for distinguishing between qualified voters within a State. * * *" (Emphasis added.)

"* * * Once the geographical unit for which a representative is to be chosen is designated, all who partici-

pate in the election are to have an equal vote—whatever their race, whatever their sex, *whatever their occupation,* whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those *who meet the basic qualifications.* * * *" (Emphasis added.)

In the present case, Relator has proven to the satisfaction of Respondent that he meets the basic qualifications of holding a valid poll tax receipt, and that he meets all of the age and residence requirements for a qualified elector in El Paso County, Texas. The Respondents do not contend that Relator is unqualified to vote because he is immature, or is of unsound mind, or is a criminal or a public charge. Instead, by Respondent's own admission, Relator is unqualified *solely* because he is a member of the Armed Forces, who resides in Texas. Such a "distinction" does not fulfill the test of reasonableness of classification as required by the Fourteenth Amendment of the United States Constitution. Moreover, the considerations which are recited in the majority opinion as affording a sound basis for denying the right to vote to members of the Armed Forces apply only to local elections; but the effect of the majority opinion is to deny the right to vote in *all* elections, even in the election of a President of the United States.

Inasmuch as Article VI, Section 2 of the Texas Constitution violates the equal protection clause of Section 1 of the Fourteenth Amendment to the Constitution of the United States, Relator's petition for writ of mandamus should be granted.

CALVERT, C. J., joins in this dissent.