**Sergeant Herbert N. CARRINGTON, Relator,**

v.

**Alan V. RASH et al., Respondents.**

No. A–10104.

Supreme Court of Texas.

April 7, 1965.

Herrick & Tillman, Fort Worth, for petitioner.

Brown, Day & Crowley, Fort Worth, for respondent.

Peticolas, Luscombe & Stephens, Wayne Windle, Jr., with above firm, El Paso, for relator.

Tad R. Smith, El Paso, Waggoner Carr, Atty. Gen., Austin, Mary Kate Parker Wall, Asst. Atty. Gen., for respondents.

STEAKLEY, Justice.

Relator, Sergeant Herbert N. Carrington, a member of the armed forces of the United States, filed his petition for writ of mandamus in this Court on April 15, 1964. The Respondents were the officials of the Republican Party of El Paso County. Relator sought the writ for the purpose of gaining recognition of his right to vote in the Republican Party Primary election of May 2, 1964. Relator entered the military service as a resident of Alabama, and under the provisions of Article VI, § 2, of the Texas Con-

stitution, Vernon's Ann.St., could not acquire a voting residence in Texas so long as he was a member of the armed forces. On the basis of this provision of the Texas Constitution, this Court by its judgment dated April 29, 1964, denied Relator's petition for mandamus.

The Supreme Court of the United States on March 1, 1965, held that the above-mentioned provision of the Texas Constitution deprived Relator of a right secured by the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, and ordered that the judgment of this Court be reversed with costs, and that the cause be remanded to this Court for further proceedings, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675.

█ Our judgment of April 29, 1964, denying Relator's petition for mandamus is set aside. The Republican Party primary election in which Relator desired to vote, and for which purpose he filed the petition for writ of mandamus, was held on May 2, 1964. This cause is now moot and the petition for writ of mandamus is dismissed.

█ The right of Relator to vote in future elections under the circumstances of this cause is, of course, guaranteed by the judgment and mandate of the Supreme Court of the United States and will be upheld by the courts of this State.

SMITH, Justice (dissenting).

I do not agree that this cause is moot.

On April 29, 1964, we held that Article VI, § 2,[1] of the Texas Constitution deprived the Relator, a nonresident of Texas at the time of entering the regular military service of the United States, of the right to acquire a voting residence in Texas so long as he

---

1. "Any member of the Armed Forces of the United States or component branches thereof, or in the military service of the United States, may vote only in the county in which he or she resided at the time of entering such service so long as he or she is a member of the Armed Forces." Articles 5.01 and 5.02 of the Texas Election Code, V.A.T.S., restate, in effect, the law as contained in the above amendment.

remained in the military service. 378 S.W. 2d 304. In so holding, we rejected petitioner's contention that this Article and Section of the Texas Constitution deprived the Relator of a right secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court granted Certiorari, 379 U.S. 812, 85 S.Ct. 33, 13 L.Ed.2d 26, and on March 1, 1965, that Court sustained petitioner's position. 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675.

The fact that the election in which the Relator desired to participate has long since been held does not preclude this Court from now declaring the law in accordance with the judgment of the United States Supreme Court. On the other hand, it is now our duty to affirmatively hold the Article and Section invalid.

This is an original petition for writ of mandamus filed by Relator, Herbert N. Carrington, to compel Respondents to determine whether or not Relator is a qualified elector for the purpose of voting in the Republican party primary to be held on May 2, 1964, without taking into consideration the fact that he is a member of the United States Army and entered the military service while residing in Alabama. Respondents in this proceeding are Honorable Waggoner Carr, Attorney General of Texas; Honorable Alan V. Rash, Chairman of the Republican party Executive Committee of El Paso County, Texas, and Honorable Margaret Hockenberry, the "presiding judge" who will conduct the Republican party primary election in Precinct No. 16 of El Paso County, Texas.

Relator is a Sergeant in the United States Army. He entered the service in 1946, when he was a resident of Jefferson County, Alabama, and has been continuously in the military service since that time. It is undisputed that Relator is at present a resident of El Paso County, Texas, where he and his family have resided since February, 1962. He has designated El Paso, Texas, as his permanent home for all purposes on his military records, has paid ad valorem taxes and will pay such taxes in the future to the City of El Paso and to the County of El Paso, and has shown on his federal income tax return that he resides in El Paso, Texas.

On December 17, 1963, Relator paid the poll tax levied for the year 1963 to the County Tax Collector of El Paso County, Texas. Thereafter, on March 18, 1964, Relator wrote a letter to Respondent Rash, asking whether or not Relator would be allowed to vote in the Republican party primary election to be held on May 2, 1964. Respondent Rash, in his capacity as Chairman of the Republican party Executive Committee of El Paso County, and on behalf of Respondent Hockenberry, as "presiding judge" of Precinct No. 16, answered by letter that:

> "Mrs. Margaret Hockenberry and I hereby refuse, and will continue to refuse to recognize Sergeant Carrington as a qualified voter. We have taken this position because he is in the United States Army and he resided outside the State of Texas at the time he entered military service."

Prior to Relator's correspondence with the Respondents, Rash and Hockenberry, the Respondent Attorney General, in an opinion, had interpreted the above amendment and its statutory counterparts. In interpreting these provisions, the Attorney General's opinion stated in part:

> " * * * It goes without saying that the Texas Constitution cannot regulate voting rights of persons at any place other than within the State of Texas, and can not affect the voting rights of residents of other States while stationed in Texas. This provision relates only to residents of this State; but it does relate both to persons who were residents of Texas before entering service and to persons who became residents of Texas after entering service. If the only place at which a person may vote in this State is the County in which he resided at the time of entering service,

and if at that time he did not reside in any County in Texas, it follows that he cannot vote in this State. Accordingly, it was said in an opinion S–148 that no person who entered service as a resident of another State may acquire a voting residence in Texas while he is in service."

Based on this opinion, Respondents Rash and Hockenberry refused to recognize Relator as a qualified voter.

Relator first contends that the Attorney General's interpretation of the above-quoted Constitutional provision is incorrect. It is Relator's position that the provision was not intended to apply to members of the Armed Forces who were *not* residents of the State of Texas at the time they entered the military service, but who are now residents of Texas. Instead, Relator contends that the Constitutional amendment was intended to apply only to servicemen who resided in Texas when they entered the service.

Relator next argues that if the Constitutional amendment in question does apply to persons who resided in Texas and those who resided elsewhere at the time of entering service, then the amendment constitutes an unlawful discrimination *within the class* of military personnel; and, therefore, violates the equal protection clause of Section 1 of the Fourteenth Amendment to the United States Constitution. Relator bases this argument upon the theory that the Constitutional amendment, if applied to all military personnel, discriminates against those servicemen who were *not* residents of Texas at the time of entering the service. To illustrate this alleged discrimination, Relator argues that a serviceman such as himself, who enters the Armed Forces in another state, and thereafter establishes his residence in Texas, is deprived of the right to become a qualified voter in any election so long as he resides in Texas and remains a member of the Armed Forces. This is so because when he acquires a new residence in Texas, he loses his voting privilege at the place where he resided when he entered service,

and he cannot meet the residence requirements of Texas. Therefore, he is left without a place to vote. On the other hand, Relator argues that the Constitutional provision in question does not so deprive a serviceman, who was a resident of Texas at the time he entered the Armed Forces, of his right to vote. According to Relator, a serviceman who resides in Harris County, Texas, at the time he enters the Armed Forces, and who thereafter changes his legal residence to El Paso County, Texas, can still remain a qualified voter in Harris County. Thus, Relator concludes the Constitutional provision unlawfully discriminates within the class of military personnel.

Respondents argue that the provision in Article VI, Section 2, of the Texas Constitution was intended to apply to persons who were not residents of Texas at the time of entering service, *and* to persons who were Texas residents. Respondents further contend that this provision does not violate the Fourteenth Amendment of the United States Constitution because *regardless of* where a serviceman resided at the time of entering service, if he changes his legal residence while in service in Texas, he relinquishes his right to vote anywhere.

A determination of this proceeding does not rest upon whether or not the Constitutional provision under attack unlawfully discriminates *within* the class of military personnel, as contended by Relator. Even assuming that it does not, as Respondents so argue, this still does not settle the ultimate constitutional problem as to whether a state may segregate *all* persons in military service as a class, which class is to be treated differently from other persons in regard to the right to vote. Such a distinction is arbitrary and unreasonable, thereby violating the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

It is true that neither the Federal Constitution, nor any of its amendments, gives to a person the privilege to vote in any state. See Minor v. Happersett, 21 Wall. 162, 22

L.Ed. 627. It is clear that the privilege to vote in a state is within the jurisdiction of the state itself, "to be exercised as the State may direct. * * *" Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817 (1904). In fact, the Federal Constitution makes voters' qualifications rest on state law even in federal elections. Art. 1, § 2. However, in exercising its broad powers to determine the conditions under which the right of suffrage may be exercised, the state cannot impose standards which the United States Constitution condemns as discriminatory. See Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072.

It is elementary that "class legislation" is invalid where the classification is arbitrary and unreasonable. The classification must rest on real and substantial differences and must reasonably promote some proper object of public welfare or interest. Thus, without contravening any restriction that Congress has imposed, a state can determine that only those persons who are literate should vote since "[t]he ability to read and write * * has *some relation* to standards designed to promote intelligent use of the ballot." Lassiter v. Northampton County Bd. of El., supra.

In the present case Respondents contend that the purpose of the Constitutional amendment in question is to prevent a concentration of military voting strength in areas where military bases are located because such concentration might lead to complete domination and control of local politics by military men to the prejudice of the civilian citizens of the community. In my opinion this is not a reasonable ground upon which the State can say that there exists a real and substantial difference between servicemen and other citizens, and thereby confer different voting rights on these classes.

With present day mobility and industrialization, large groups, *other than servicemen*, move into the various communities of this state for limited stays, and establish voting residence. One need only look to the large shifts of civilian population to major construction areas as an illustration of this fact.

Wherein lies the reasonable basis for distinguishing between these groups?

In the recent case of Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), our Supreme Court has said:

"* * * there is no indication in the Constitution that homesite or *occupation* affords a permissible basis for distinguishing between qualified voters within the State. * * *" (Emphasis added.)

"* * * Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, *whatever their occupation*, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment. The concept of 'we the people' under the Constitution visualizes no preferred class of voters but equality among those *who meet the basic qualifications* * * *" (Emphasis added.)

In the present case, Relator has proven to the satisfaction of Respondents that he meets the basic qualifications of holding a valid poll tax receipt, and that he meets all of the age and residence requirements for a qualified elector in El Paso County, Texas. The Respondents do not contend that Relator is unqualified to vote because he is immature, or is of unsound mind, or is a criminal or a public charge. Instead, by Respondents' own admission, Relator is unqualified *solely* because he is a member of the Armed Forces, who resides in Texas. Such a "distinction" does not fulfill the test of reasonableness of classification as required by the Fourteenth Amendment of the United States Constitution.