**MEXICAN–AMERICAN FEDERATION–WASHINGTON STATE, a non-profit organization; Caesario Jiminez; Simon Ramos; Jennie Marin; and Marta Cantu; on their own behalves and on behalf of all others similarly situated, Plaintiffs,**

v.

**Eugene NAFF, Yakima County Auditor; Maurine Seefeldt, Toppenish City Clerk and Yakima County Deputy Registrar; and Charles Skinner, Zillah City Clerk and Yakima County Deputy Registrar; on their own behalves and on behalf of all others similarly situated, Defendants,**

**The State of Washington, a body politic, and A. Ludlow Kramer, Secretary of State, Additional Defendants.**

Civ. A. No. 2457.

United States District Court
E. D. Washington, S. D.
May 2, 1969.

Charles E. Ehlert, Seattle, Wash., for plaintiffs.

Lincoln E. Shropshire, Pros. Atty., Jon Harlan, Deputy Pros. Atty., Yakima, Wash., for defendant, Eugene Naff, Yakima County Auditor.

Joseph C. Murphy, Toppenish, Wash., for defendant Maurine Seefeldt.

Ted Roy, of Hovis, Cockrill & Roy, Yakima, Wash., for defendant Charles Skinner.

## OPINION OF THE COURT

Before HAMLEY, Circuit Judge, and POWELL and GOODWIN, District Judges.

GOODWIN, District Judge.

Article VI of the Washington State Constitution as amended by Amendment 5, Section 1, provides in part as follows:

"QUALIFICATIONS OF ELECTORS. All persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections: They shall be citizens of the United States; they shall have lived in the state one year, and in the county ninety days, and in the city, town, ward or precinct thirty days immediately preceding the election at which they offer to vote; they shall be able to read and speak the English language:"

It is the last sentence that has precipitated this controversy.

## THE PLAINTIFFS

The Mexican-American Federation is a Washington corporation. Its purposes include to represent, promote and achieve the economic, social and cultural interests of all Mexican-American people in the State of Washington.

The plaintiff, Caesario Jiminez, is a citizen of the United States, over the age of twenty-one (21) years, and was born in the State of Texas.

The plaintiff, Simon Ramos, is a citizen of the United States, over the age of twenty-one (21) years, and was born in the State of Texas.

The plaintiff, Jennie Marin, is a citizen of the United States, over the age of twenty-one (21) years, and was born in the State of Colorado.

The plaintiff, Marta Cantu, is a citizen of the United States, over the age of twenty-one (21) years, and was born in the State of Texas.

They are members of the Mexican-American Federation. They bring this action individually and as a class action.

## THE DEFENDANTS

The defendant, Eugene Naff, is the Auditor of Yakima County who is empowered by statute to act as Registrar of Voters, R.C.W. 29.07.010, for said county and to appoint deputy registrars to assist him in the performance of his statutory duty. Naff, among others, appointed defendant, Maurine Seefeldt, the City Clerk of the City of Toppenish, Yakima County, Washington, and the defendant, Charles Skinner, the City Clerk of the City of Zillah, Yakima County, Washington, deputy registrars.

In addition, the plaintiffs have named the State of Washington and A. Ludlow Kramer, Secretary of State, as defendants.

## THE CLAIMS

Plaintiffs contend:

1. That the provision in Amendment 5 that requires voters to be able to speak and read the English language is offensive to the First, Fourteenth and Fifteenth Amendments of the Constitution of the United States.

2. That the defendants, Seefeldt and Skinner, have engaged in discriminatory practices by their refusal to register to vote plaintiffs and other members of the class that plaintiffs represent because of plaintiffs' inability to read and speak the English language; and

3. The defendants administered literacy tests to plaintiffs and other members of the class that plaintiffs represent which are discriminatory and contravene the provisions of 42 U.S.C.A. § 1971(a) (2) (C) (i).

■ Preliminary to any reference to the facts, it is necessary to resolve the issue of the plaintiff corporation, Mexican-American Federation's right to seek the relief it requests. The claims of the corporation and the individual plaintiffs are the same. In addition to the attack on the constitutionality of the English language provision of Amendment 5, plaintiffs seek redress pursuant to the provisions of 42 U.S.C.A. § 1983 (the Civil Rights Act) and 42 U.S.C.A. § 1971 (the Voting Rights Act).

Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423, settled this issue. In *Hague*, the American Civil Liberties Union, in addition to other plaintiffs, brought an action for redress of civil rights under the First Amendment and for violation of the privileges and immunities clause of the Fourteenth Amendment, although the action was grounded on provisions of 28 U.S.C.A. § 41. The provisions of that section are now codified as 42 U.S.C.A. § 1983 so that the claims were of the same character as the civil rights claims of the instant plaintiffs. The Court made reference to the right of the A.C.L.U. corporate plaintiff to maintain the action. At page 527 of the opinion, at page 969 of 59 S.Ct., it was stated:

"Since freedom of speech and freedom of assembly are rights secured to persons by the due process clause, all of the individual respondents are plainly authorized by § 1 of the Civil Rights Act of 1871 to maintain the present suit in equity to restrain infringement of their rights. As to the American Civil Liberties Union, which is a corporation, it cannot be said to be deprived of the civil rights of freedom of speech and of assembly, for the liberty guaranteed by the due process clause is the liberty of natural, not artificial, persons."

It is clear that the Mexican-American Federation has no standing in this cause and must be dismissed as a plaintiff.

It is also clear that the plaintiffs, Jiminez, Ramos, Marin and Cantu may maintain this class action if the prerequisites to a class action required by Rule 23 of the Rules of Civil Procedure are present. We conclude that the prerequisites are, in fact, present. Plaintiffs allege that defendants, Kramer, Seefeldt and Skinner, are representatives of a class. The Secretary of State of the State of Washington, in his official capacity, cannot be a member of a class. The same is true of the County Auditor of Yakima County in his official capacity. The defendants, Seefeldt and Skinner, are appointees of the defendant Naff and could only be called members of a class of appointees. The answer to plaintiffs' claim is not necessary to the ultimate decision of the Court.

## THE FACTS

In 1968 the plaintiff organization embarked on a voter registration project in Yakima County, Washington. This is the county in which the individual plaintiffs and other members of the class reside. The plaintiffs, Jiminez, Ramos, Marin and Cantu, presented themselves to the deputy registrars in the towns of Toppenish and Zillah, Yakima County. At the time that each of the plaintiffs appeared at the office of the deputy registrar, he or she was accompanied by one Guadulupe Gamboa, who spoke to the deputy registrar in English, and told the deputy registrar that the plaintiffs wished to register to vote. Gamboa stated that he would interpret from Spanish to English and English to Spanish for the plaintiff applicants so that the deputy registrars, defendant See-

feldt, defendant Seefeldt's employee, a Mrs. Alexander, and defendant Skinner would be able to obtain essential information for their records in effecting a proper registration of the plaintiff applicants. This proffered service of Gamboa was refused by defendants Seefeldt, Skinner and defendant Seefeldt's employee, Alexander. Gamboa was advised that the plaintiffs must present their request to register in person to the deputy registrars, not by interpreter, and make such request in the English language so that the deputy registrars could follow the mandate of the Washington Constitution.

In varying degrees (the amount of variation is not important to the Court's determination of the issues), plaintiffs had some knowledge of English.

Plaintiff Jiminez could speak a few words of English but he could not read or write it. He speaks and reads Spanish. He could only testify at the trial by interpreter. Plaintiff Ramos could not speak or read English. He testified by interpreter. Plaintiff Marin could speak English so that an interpreter was not needed when she testified, but she stated she could not read or write it. Plaintiff Cantu could read simple words and understand some English phrases but required an interpreter when she testified. All plaintiffs testified that they could not read or understand the following oath when it was read to them in English:

"You do solemnly swear (or affirm) that you will fully and truly answer such questions as may be asked touching your qualifications as a voter under the laws of this state."

It was apparent at the trial that none of the plaintiffs had sufficient familiarity with the English language to answer in English questions propounded to them by the deputy registrars and necessary to the completion of the registrar's form. This form contains information essential to the keeping of the records by the registrar of the County of Yakima and is prefaced by the applicant's oath:

"I, the undersigned, do solemnly swear that the foregoing facts (numerically designated) touching my qualifications as a voter entered in my presence by the registration officer are true. I further certify that I will be at least twenty-one years of age on the day of the next election and that I am able to read and speak the English language."

The defendant registrars refused to register plaintiffs because plaintiffs were unable to speak and read the English language.

## THE LAW

The detailed claims by plaintiffs are that Article VI, Amendment 5, Section 1:

(a) discriminates against the plaintiffs;

(b) denies them liberty without due process of law;

(c) abridges plaintiffs' privileges and immunities as citizens of the United States;

(d) denies the plaintiffs the right to petition their government for redress of their grievances under the due process clause of the Fourteenth Amendment of the Constitution of the United States;

(e) abridges plaintiffs' right to assemble and associate peacefully; and

(f) denies the plaintiffs the right to vote on account of race.

The Constitution of the State of North Carolina contains a literacy test. It is found in Section 4, Article VI. The pertinent part of Section 4 reads as follows:

"Every person presenting himself for registration shall be able to read and write any section of the Constitution in the English language. * * *"

The provision in the North Carolina Constitution is more stringent than that found in Amendment 5, Article VI, of the Washington State Constitution. The constitutionality of the provision of the North Carolina Constitution was upheld by the Supreme Court of the United

States in Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072. At page 51 of the Court's opinion, at page 990 of 79 S.Ct., Justice Douglas, speaking for the Court, had this to say:

"We do not suggest that any standards which a State desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. Residence requirements, age, previous criminal record are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters. The ability to read and write likewise has some relation to standards designed to promote intelligent use of the ballot. Literacy and illiteracy are neutral on race, creed, color, and sex, as reports around the world show. Literacy and intelligence are obviously not synonymous. Illiterate people may be intelligent voters. Yet in our society where newspapers, periodicals, books, and other printed matter canvass and debate campaign issues, a State might conclude that only those who are literate should exercise the franchise."

and at page 53, 79 S.Ct. at page 991:

"The present requirement, applicable to members of all races, is that the prospective voter 'be able to read and write any section of the Constitution of North Carolina in the English language.' That seems to us to be one fair way of determining whether a person is literate, not a calculated scheme to lay springes for the citizen. Certainly we cannot condemn it on its face as a device unrelated to the desire of North Carolina to raise the standards for people of all races who cast the ballot."

■ The constitutional provision that a person otherwise eligible must speak and read the English language is a valid exercise of the State of Washington's power to determine the conditions under which the right of suffrage may be exercised. Guinn v. United States, 238 U.

S. 347, 35 S.Ct. 926, 59 L.Ed. 1340; Pope v. Williams, 193 U.S. 621, 633, 24 S.Ct. 573, 48 L.Ed. 817; Lassiter v. Northampton County Board of Elections, 360 U.S. 45, 79 S.Ct. 985, 3 L.Ed.2d 1072.

■ To implement the provisions of Article VI, Amendment 5, of the Constitution, the Legislature of the State of Washington enacted R.C.W. 29.07.070. It provides:

"Having administered the oath, the registration officer shall interrogate the applicant for registration, concerning his qualifications as a voter * * * requiring him to state:

* * *

"(13) Whether the applicant * * is able to read and speak the English language so as to comprehend the meaning of ordinary English prose, and in case the registration officer is not satisfied in that regard, he may require the applicant to read aloud and explain the meaning of some ordinary English prose, * * *."

The defendants State and Kramer concede that the provision of R.C.W. 29.-07.070 authorizing the registrar to "require applicant to read aloud and explain the meaning of some ordinary English prose" conflicts with 42 U.S.C.A. § 1971 (a) (2) (C) (i). It provides:

"(2) No person acting under color of law shall—

(C) employ any literacy test as a qualification for voting in any election unless (i) such test is administered to each individual and is conducted wholly in writing, and (ii) a certified copy of the test and of the answers given by the individual is furnished to him within twenty-five days of the submission of his request made within the period of time during which records and papers are required to be retained and preserved pursuant to sections 1974–1974e of this title."

This section has been amended and made applicable to the state elections. Pub.L. 89–110, § 15(a) (1965)

However, the defendants refer to two opinions of the Attorney General of the State of Washington in which the Secretary of State is advised of the conflict and of the invalidity of the provision of the state statute, and further advised that no literacy test should be administered by any registrar or deputy registrar in the state until such time as a universal test has been promulgated, and which test complies with the requirement of 42 U.S.C.A. § 1971.

It was further stated by defendants and not contradicted that the Attorney General's opinion has been circulated throughout the State of Washington, and all registrars and deputy registrars are presently following the directive contained in the opinion that no literacy tests should be administered to applicants who seek to register to vote.

The enforcement provision of the Voting Rights Act, 42 U.S.C.A. § 1971, empowers the Attorney General of the United States to institute the appropriate action to enforce the provisions of the Act. We do not decide the question of the propriety of plaintiffs seeking relief pursuant to its terms. 42 U.S.C.A. § 1971(c):

"(c) Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. If in any such proceeding literacy is a relevant fact there shall be a rebuttable presumption that any person who has not been adjudged an incompetent and who has completed the sixth grade in a public school in, or a private school accredited by, any State or territory, the District of Columbia, or the Commonwealth of Puerto Rico where instruction is carried on predominantly in the English language, possesses sufficient literacy, comprehension, and intelligence to vote in any election. In any proceeding hereunder the United States shall be liable for costs the same as a private person. Whenever, in a proceeding instituted under this subsection any official of a State or subdivision thereof is alleged to have committed any act or practice constituting a deprivation of any right or privilege secured by subsection (a) of this section, the act or practice shall also be deemed that of the State and the State may be joined as a party defendant and, if, prior to the institution of such proceeding, such official has resigned or has been relieved of his office and no successor has assumed such office, the proceeding may be instituted against the State."

There is no evidence that the registrars and deputy registrars are not following the directive, and it would serve no useful purpose to enter an order of a like character in this cause.

Plaintiffs urge that any inquiry with respect to plaintiffs' knowledge of English is, in fact, a literacy test. Webster defines test as follows: "a series of questions or exercises or other means of measuring the schooling, knowledge, intelligence, capacities, or aptitudes of an individual or group."

■ The history of the Voting Rights Act and cases construing its provisions indicate that the congressional intent providing for written tests was to prohibit variations in the type of literacy tests given to applicants who sought to register to vote so that discriminatory practices disqualifying negroes could not be maintained. United States v. Manning, 215 F.Supp. 272, 294 (W.D.La., 1963); United States v. Mayton, 335 F. 2d 153, 159 (5 Cir., 1964). A simple inquiry by the registrar of the applicant

in this form, "Can you speak and read English?" is not a test and could not conceivably result in discriminatory practices. Nor is the oath required of the applicant offensive to the provisions of 42 U.S.C.A. § 1971.

Plaintiffs have alleged that the defendants administered literacy tests to Mexican-American members of the plaintiffs' class more frequently, more carefully, and more stringently than they have administered them to other persons, including Anglo-Americans whose ability to read and speak English is imperfect or limited.

This contention was fully explored and plaintiffs were able to establish one isolated incident where what might be called a literacy test was, in fact, administered when plaintiff, Marta Cantu, appeared at the office of the defendant Skinner in Zillah accompanied by Gamboa. The plaintiff Cantu was unable to read the preliminary oath. Thereupon, Skinner asked her if she could read the names on the list of candidates which he presented to her. She was unable to read the list and did testify that her ability to read was limited to a few simple words in her children's school books. Skinner had already been told by Gamboa that plaintiff Cantu could not read and speak the English language. It would appear that Skinner's conduct was designed to assist Cantu rather than to hinder her in her application to register. Although this incident might be termed a test, it is an isolated incident and does not sustain plaintiff's contentions that the registrars and deputy registrars in Yakima County were engaged in any practices that had discriminatory overtones.

We therefore conclude that plaintiffs have failed to establish any factual or legal basis for injunctive relief against the defendants, and their requests for such relief must be denied.

This opinion will serve as findings of fact and conclusions of law in this cause, and counsel for defendants may prepare a judgment to conform to the conclusions we reach herein.