30 N.Y.2d 401 (1972)
In the Matter of Nelson D. Atkin, II et al., Appellants,
v.
Onondaga County Board of Elections, Respondent.
In the Matter of Robert J. Rabin, Appellant,
v.
Onondaga County Board of Elections, Respondent.
Court of Appeals of the State of New York.
Argued April 24, 1972.
Decided June 7, 1972.
Frederick Alan Provorny for appellants.
Eli Gingold, County Attorney (Ronald J. Crowley of counsel), for respondent.
Louis J. Lefkowitz, Attorney-General (William J. Kogan and Ruth Kessler Toch of counsel), in his statutory capacity under section 71 of the Executive Law.
Chief Judge FULD and Judges BURKE, BERGAN, BREITEL, JASEN and GIBSON concur.
*403 SCILEPPI, J.
Petitioners, who first became county residents in September, 1971, sought to register for the November 2, 1971 general election, but were refused registration because they would not have been residents of Onondaga County for three *404 months prior to election day (see N. Y. Const., art. II § 1; Election Law, § 150). This proceeding under section 331 of the Election Law, challenging the 90-day New York durational residency requirement followed.
Though the States have the recognized authority to establish the conditions under which the right to vote may be exercised (see, e.g., Evans v. Cornman, 398 U. S. 419; Carrington v. Rash, 380 U. S. 89, 91; Lassiter v. Northampton Election Bd., 360 U. S. 45, 50), any restriction, be it age, duration of residency or residency itself which would have the effect of denying the franchise to any group, in order to muster constitutional scrutiny "must be * * * `necessary to promote a compelling state interest'"[*] (Dunn v. Blumstein, 405 U. S. 330, 337-343; Bullock v. Carter, 405 U. S. 134, 143; Oregon v. Mitchell, 400 U. S. 112, 229, 238 [opn. of BRENNAN, WHITE and MARSHALL, JJ.]; Evans v. Cornman, 398 U. S. 419, 422, supra; Kramer v. Union School Dist., 395 U. S. 621, 625; Matter of Palla v. Suffolk County Bd. of Elections, 31 N Y 2d 36, decided herewith). Because durational residency requirements must inevitably impinge upon such constitutionally secured rights as to the right to vote and the right of interstate travel (see, e.g., Shapiro v. Thompson, 394 U. S. 618), they must be closely scrutinized under this strict equal protection test and, when challenged, the onus of establishing that "no less intrusive means" will advance a substantial and compelling State interest devolves upon the State (Oregon v. Mitchell, 400 U. S., at p. 238 [opn. of BRENNAN, WHITE and MARSHALL, JJ.]). "And if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. *405 If it acts at all, it must choose `less drastic means,' Shelton v. Tucker, 364 U. S. 479, 488 (1960)," (see, also, Dunn v. Blumstein, 405 U. S. 330, 342-343, supra; see, also, Oregon v. Mitchell, 400 U. S., at p. 238 [opn. of BRENNAN, WHITE and MARSHALL, JJ.]). Measured by that standard, New York's 90-day residency requirement violates the equal protection guarantee of the Fourteenth Amendment.
In terms of its purposes and effects, this State's durational residency requirement is indistinguishable from that recently invalidated by the Supreme Court in Dunn v. Blumstein (405 U. S. 330, supra). The pre-eminent protection against fraudulent evasion of voter standards today resides in a system of voter registration supplemented by procedures for independent verification of residence (Election Law, § 350; see, also, Election Law, §§ 390-399). Though a significant population differential would suggest increased difficulty in protecting the purity of the ballot box and in guarding against wholesale voter fraud, this State's system of permanent personal registration (Election Law, §§ 350-352) demonstrates that the task is far less formidable than it first appears. A policy of keeping registration books open until 30 days prior to an election (Election Law, §§ 354, 355) further belies any argument that independent investigative efforts are advanced by a more lengthy durational residency requirement (cf. Dunn v. Blumstein, 405 U. S. 330, 347-349, supra).
On the whole, other, more viable and considerably less drastic alternatives, including systems of voter registration and the relatively simple task of independent investigation during the 29 days immediately preceding an election, are available for preventing voter fraud (Election Law, §§ 390-399). Broadly imposed political disabilities, such as those embodied in durational residency requirements belong to another day and under current standards are simply too imprecise to withstand constitutional scrutiny (Dunn v. Blumstein, 405 U. S. 330, 350-352, supra; Carrington v. Rash, 380 U. S. 89, 95-96, supra). We have little alternative but to strike such devices down.
Accordingly, the order appealed from should be reversed and the matter remitted to Special Term for entry of a judgment *406 granting the petition and ordering that petitioners be registered to vote, and declaring section 1 of article II of the New York Constitution and section 150 of the Election Law violative of the equal protection clause of the Fourteenth Amendment, insofar as they require that a voter be residenced in the State or relevant political subdivision for a period exceeding 30 days next preceding an election.
Order reversed, without costs, and the matter remitted to Special Term for further proceedings in accordance with the opinion herein.
NOTES
[*] Petitioners, by these proceedings, challenge only this State's durational residency requirement. We emphasize the distinction between such requirements and bona fide residence requirements which the Supreme Court has approved (see, e.g., Evans v. Cornman, 398 U. S. 419; Kramer v. Union School Dist., 395 U. S. 621; Carrington v. Rash, 380 U. S. 89): Generally speaking, "An appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny. But durational residence requirements, representing a separate voting qualification imposed on bona fide residents, must be separately tested by the stringent standard. Cf. Shapiro v. Thompson, supra, 394 U. S., at 636." (Dunn v. Blumstein, 405 U. S. 330, 343-346 [note omitted].)